[No. 7290.   Decided November 23, 1908.]

WILLIAM STEWART, *Appellant*, v. ROBERT BALFOUR *et al.*,
*Respondents*.[1]

MASTER AND SERVANT—INJURIES—FELLOW SERVANTS—SERVANTS OF OTHER EMPLOYER. Employees of a wheat shipper, engaged on the wharf in delivering sacks of wheat into a chute for loading a ship, are not "loaned" to the stevedores having the contract for loading the ship merely because they are under the direction of the stevedores' workmen, and so are not fellow servants of an employee of the stevedores engaged on the ship in receiving the sacks and loading the ship.

MASTER AND SERVANT—INJURIES—FALL OF SACK IN LOADING SHIP —CONTRIBUTORY NEGLIGENCE—UNSAFE METHOD — EVIDENCE — SUFFI-CIENCY. An employee of stevedores loading a wheat ship, thrown down from a ladder by the fall of a wheat sack from the dock chute, is guilty of contributory negligence, as a matter of law, precluding any recovery for negligence in placing the sack in the chute, where it appears that he mounted the ladder to place a riffle in the chute while sacks were coming down at the rate of twenty per minute, that sacks frequently fall from the chute, and that he might have directed the men to cease throwing in sacks while he was placing the riffle, and his use of the ladder at all was unusual and unnecessarily dangerous, and a safer way was well known to him.

SAME—ASSUMPTION OF RISKS. In such a case, the plaintiff assumes the risk from the falling of a sack, which he knew happened several times a day, whether the same was due to negligence in placing the sacks in the chute or other causes.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered December 14, 1907, upon the verdict of a jury rendered in favor of the defendants by direction of the court, after a trial on the merits, in an action for personal injuries sustained by an employee loading a ship. Affirmed.

*Ellis, Fletcher & Evans*, for appellant.
*James M. Ashton* and *W. H. Hayden*, for respondents.

[1]Reported in 98 Pac. 103.

HADLEY, C. J.—This is an action to recover damages for personal injuries. The plaintiff seeks to recover from the partnership of Balfour, Guthrie & Company. He was at the time in the employ of McCabe & Hamilton, stevedores, in the city of Tacoma. McCabe & Hamilton were employed by the shipowners to load a French sailing ship called the "Bidart," with sacks of wheat, at the defendants' wharf, in Tacoma. It is alleged that the stevedores employed controlled and discharged the men on board the ship who were engaged in loading the same with wheat, and that the defendants did the same with men on the wharf who were engaged in delivering the wheat in sacks into the chute for loading in the ship.

At the time of receiving his injury, the plaintiff was assisting to load the ship under the general direction of the foreman of the stevedores, and under the immediate direction of the sack turner to whom the plaintiff was tender or assistant. The tide was low, and the deck of the vessel was much lower than the level of the surface of the wharf. The ship's rail was about five or five and one-half feet above the deck, and the hatch comb or curb around the hatch in the middle of the deck was about two and one-half or three feet higher than the level of the deck. For the purpose of loading the ship, two chutes were used, one known as the "tongue" chute, being about fourteen feet long, and running at a slight incline from the ship's rail to the hatch comb, the outer end resting upon the ship's rail and the inner end upon a board across the hatch comb known as the sliding board. The other chute, known as the dock chute, was about eighteen or twenty feet long, and extended at a steeper incline from the edge of the wharf to the first mentioned chute, with the lower end of the dock chute resting in the tongue chute at a point two or three feet from the hatch comb, the upper end of the dock chute being on and secured to the wharf. As the ship was lowered by the falling of the tide or by the weight of the accumulating cargo, the incline of the dock chute became steeper, and the·

lower end gradually slipped back toward the wharf in the tongue chute.

At the time of the accident there was, also, another unused chute lying alongside the tongue chute, upside down, one end resting upon the ship's rail and the other end upon the hatch comb. The sacks of wheat were brought on trucks with five or six sacks to the load, and two men would take hold of the sacks on either side and place them lengthwise in the upper end of the dock chute so that they would slide down it to the tongue chute and thence along the latter to the sack turner's position at the hatch comb. The duties of the sack turner required him to sit upon a board across the hatch comb at one side of the place where the inner end of the tongue chute rested, and turn the sacks alternately into still two other chutes, which ran down from the hatch into the body of the vessel and conveyed the sacks into the ship below, where other employees of the stevedores were engaged in storing the wheat away in the ship.

The plaintiff was employed by the stevedores as tender or assistant to the sack turner, and he was under the immediate orders and direction of the latter. All the men on board the ship engaged in loading were under the stevedores' foreman, who directed the general operation of stowing away the wheat on the vessel. It was the duty of the plaintiff to obey the orders of the sack turner in keeping the chutes in position and in removing or putting riffles into the chutes. The riffles are thin pieces of board, rounded smoothly at the top, and placed crosswise in the bottom of the chute, the ends resting in grooves cut in the sides of the chute, the grooves extending from the bottom to the top of the chute so that riffles can be dropped in instantly when required. The purpose of the riffles is to render the bottom of the chute more uneven, and by increasing the friction, to retard the speed of the sacks as they descend. More riffles are from time to time inserted as the ship gets lower and the chutes correspondingly steeper.

The man who places the riffles usually stands waiting at the side of the chute, and when the men on the dock have unloaded one truck and while another is coming up, he inserts a riffle, or if there is an immediate necessity, he can drop the riffles into the proper grooves between the sacks as they descend, if they are not coming too rapidly.

The complaint alleges that the tide was low and the descent of the chute was so steep that the sacks came down very swiftly, making it difficult for the sack turner to handle them, and that he ordered the plaintiff to place a riffle in the dock chute, to retard the speed of the sacks; that the plaintiff thereupon secured a ladder and placed one end upon the deck, resting the other end upon the unused, inverted chute, hereinbefore mentioned as lying alongside the tongue chute; that he placed the ladder so that the upper end was some eighteen inches to one side of the two chutes in use, and at least three feet below the dock chute, at a point about six or seven feet from the ship's rail and seven or eight feet from the hatch comb. While the ladder was in this position, he climbed upon it for the purpose of placing a riffle in the chute, and he alleges that, when about half way up the ladder, the two men upon the dock, and who were placing the sacks in the dock chute, carelessly and recklessly threw a sack of wheat upon the side of the chute so that it hung partly out of it, and in that position it slipped rapidly down, hanging over the side until immediately above the place where the ladder was standing, when it fell clear off the chute, struck the ladder, knocked it from its position under plaintiff, and threw him with great force to the deck below, whereby he was injured.

The defendant answered that the plaintiff's own negligence led to his injury, and also that he well knew that, in the ordinary loading of the vessel with the appliances then used, it was a common thing for sacks of wheat to fall out of the chutes upon the deck; that he knew the construction and arrangement of the chutes and ladder, and knew and appreciated all the risks and dangers connected with the same; and that

they were incident to the service then being performed by
him.    The cause came on for trial before a jury, and at the
close of the testimony, the defendants moved for an instructed
verdict in their favor.    The motion was granted.    A verdict
was returned for the defendants, and judgment was entered
accordingly.    The plaintiff has appealed.

A number of grounds for this instructed verdict were speci-
fied in the respondents' motion, but the record does not disclose
upon what particular ground the court based its ruling.    Ap-
pellant says in his brief that the trial court held that the two
men upon the wharf at the head of the chute who were deliver-
ing the wheat into the chute were, for the time being, fellow
servants of the appellant, and that respondents are for that
reason not liable.    We will first examine this question.    It is
established that appellant was in the employ of the stevedores
and subject to the direction of their foreman, and more imme-
diately, of the sack turner.    The two men upon the wharf
who threw the sacks into the chute were in the employ of the
respondents, and were paid by them.    For the time being,
however, they were subject to the directions of the stevedores,
the latter having control of the situation there while the ship
was being loaded.    Respondents' men brought the wheat to
the edge of the wharf and delivered it into the chute, but it
was agreed by all parties concerned, and all, including the
appellant, well knew, that the men upon the wharf were at all
times, while the loading was going on, subject to the directions
of the stevedores.    If they were delivering the sacks too
rapidly or too slowly to suit the convenience of the stevedores,
they acted upon the orders of the latter and decreased or
increased the speed of delivery as the orders required.    If the
surface of the chute became so dry and smooth that the sacks
slid too rapidly, and if the stevedores desired to correct that
by inserting riffles in the chute, as hereinbefore explained, the
men upon the wharf ceased delivering sacks, if ordered so to
do, while the riffles were being placed.    The duty of giving
the order to so cease delivering the sacks rested upon the ap-

pellant. Such an order might be communicated to appellant by the foreman or by the sack turner of the stevedores, both of whom were his superiors; but he was also authorized to give the order himself and of his own motion when it became necessary for the purpose of inserting the riffles.

Under these circumstances, respondents argue that the men upon the wharf were, for the time being, loaned by them to the stevedores, and that respondents cannot be liable for their acts during that time. We think it should not be said that there was an absolute loan of the servants in the sense in which that term is sometimes used with reference to a shifting of employees. They were still the servants of respondents and were delivering the respondents' wheat into the chute. Except in so far as they were subject to the direction of the stevedores, they represented their own masters, the respondents, at that particular place. In so far as the stevedores were responsible for their control, the respondents cannot be held liable; that is to say, if the stevedores or their employees neglected to properly instruct or order the men how to regulate the speed of the sacks or when to cease throwing them into the chute so as to serve the purposes of safety, then respondents cannot be liable for what may have resulted from such neglect of the stevedores. If, however, the employees of respondents so carelessly threw the sack in that it hung over the side and created a dangerous condition, the act was one not directed or in any way controlled by the stevedores, but it was simply the careless act of respondents' employees while they stood in the position of their master discharging a duty for the latter. Such is the character of the negligence charged in the complaint, and we think the proofs were such that it should not be held, as a matter of law, that respondents' servants, for the purposes of the negligent act here charged, were loaned to and under the control of the stevedores.

Respondents insist that appellant's own negligence was the proximate cause of his injury, and that it should be so held as a matter of law. We have read the evidence, and find that

it was entirely within the power of appellant to direct the men to cease throwing in the sacks while he inserted the riffles. He well knew that he could control the men for that purpose, but he made no effort to do so. He undertook to insert the riffles in the bottom of the chute while the sacks were coming down at the rate of twelve hundred per hour, or twenty per minute. He knew it was a common thing for sacks to fall over the side of the chute, a thing which often happened several times a day, and of course no one could anticipate just what moment it would happen. He took a ladder and placed it so that its top projected above the unused chute against which it rested and so as to receive the force of a sack if it should fall over the side of the chute above it. The use of a ladder for the purpose was, as the evidence discloses, an almost unheard of thing. Practically all of the witnesses testified that they had never seen a ladder used for that purpose. The almost universal way of reaching the dock chute, when a riffle is to be inserted, is to step up on the unused or inverted chute, which served as a kind of platform upon which to stand while adjusting the riffle in the dock chute above. The height of this platform at the hatch comb end was about two and one-half or three feet, and it could be easily reached without a ladder, after which one could walk along it as it sloped toward the top of the ship's rail, and could easily reach into the dock chute above and insert the riffles.

But notwithstanding this appliance and the custom as to its use, which was well known to appellant, he chose the use of the ladder, placed it in a dangerous position where it was liable to be struck by a falling sack any instant, ascended the ladder, gave no order for the rapid movement of the sacks to cease, and while he stood upon the ladder, the bounding sack struck it and knocked it down. It seems to us that the minds of reasonable jurors could not have failed to agree that appellant's injury was due to his own contributory negligence; and such being the case, it was the duty of the trial court to so hold as a matter of law. The granting of the motion for

an instructed verdict had that effect, as respondents asked the instruction on that ground among others.

Appellant argues that, if the sack had been properly placed in the chute, it would not have fallen over, and that it was the neglect of respondents' servants that it was improperly put into the chute. He claims he had a right to presume that the sacks would be properly placed in the chute. Whether the falling of sacks resulted from actual negligence, or whether it resulted from a mere occasional condition incidental to the rapid handling and movement of the sacks which even ordinary care could not at all times prevent, the fact remains in either event that appellant knew it was a thing that was liable to happen a number of times in the course of a day. He must, therefore, be held to have assumed the risks attending the peculiar situation as he stood upon the ladder. It was within his power to take the usual and manifestly safer course, and also to order the movement of the sacks to cease. Since he did neither, and since he knew from observation and experience that a sack was liable to fall any instant, he cannot be heard to say that he did not assume the risk of such a situation. He could easily have made the situation safe, and he well knew how to do it; but having chosen to do otherwise, he cannot now say that he did not assume the consequences of the course which he took.

The judgment is affirmed.

RUDKIN, DUNBAR, ROOT, CROW, and MOUNT, JJ., concur.

FULLERTON, J., took no part.